The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SAMUEL REZENE,<br><br>Defendant. | NO. CR16-185 JLR<br><br>GOVERNMENT'S RESPONSE TO MOTION TO EXCLUDE HEARSAY EVIDENCE AT EVIDENTIARY HEARING |

Defendant Samuel Rezene has moved to exclude the out-of-court statements of Marvin Smith, a witness at the scene of the one-car accident that underlies the pending supervised release violations, and Alganesh Tesfaselasie, Rezene's mother and the registered owner of the crashed vehicle. Both individuals gave recorded statements to police officers on the night of the car crash.

Regarding Ms. Tesfaselasie, the Court should deny the defense motion as moot. The government will subpoena her to the hearing and either present her testimony or make her available for the defense to call as a witness.

The Court should deny the motion on the merits as it pertains to Marvin Smith. His statements are admissible at the evidentiary hearing for several independent reasons: the hearsay rules do not apply; the statements are not so singularly critical to the Court's

Response to Motion to Exclude Hearsay Evidence
*United States v. Rezene*, CR16-185 JLR
Page - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

decision that their admission would violate the limited Due Process and confrontation rights that do apply; the statements are non-testimonial in nature and therefore their admission would not violate the Confrontation Clause (even at a jury trial); and, in the alternative, the statements are admissible as non-hearsay evidence to explain the subsequent actions of the officers. Moreover, the government has good cause for not calling Smith as a witness because law enforcement has tried but failed to locate him.

## PROCEDURAL BACKGROUND

On September 12, 2017, this Court sentenced Rezene to 92 months of imprisonment, following a stipulated facts bench trial at which he was found guilty of Unlawful Possession of a Firearm. Dkt. 88. Rezene began his term of supervision on August 9, 2023. Less than three months later, Rezene is alleged to have committed two violations of supervised release: committing the crimes of Unlawful Possession of a Firearm and Hit and Run, on October 31, 2023. Rezene has been in custody since that date. Rezene is denying both violations and an evidentiary hearing is scheduled for March 26, 2024.

## FACTUAL BACKGROUND[1]

On October 31, 2023, at approximately 12:45 a.m., Seattle Police Department officers were dispatched to a single-car rollover accident at North 105th Street and Aurora Avenue North. Upon arrival they observed a white 2021 GMC Yukon, with temporary license plate A6760339, lying on its side in the southbound lanes of Aurora Avenue. The Yukon had collided with a large tree and then rolled on its side. The officers later determined that the registered owner of the Yukon was Alganesh Tesfaselasie, Samuel Rezene's mother.

---

[1] This factual summary is based on the police reports, photos taken from the crime scene, and the police body camera footage, all of which has been provided to the defense as part of the discovery materials in this case.

Response to Motion to Exclude Hearsay Evidence
*United States v. Rezene*, CR16-185 JLR
Page - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A few minutes after arriving on scene, officers located a witness, Marvin Smith, who was standing at a bus stop. Officers Walters and Cannon spoke to Smith and recorded the interaction on their body-worn cameras. *See Exhibit 1* (three-minute video of the conversation). Smith identified himself by name and date of birth. When asked if he wanted to provide a phone number, Smith responded in the negative.[2]

Smith told the officers that he saw the vehicle crash and went to help to any occupants. Smith stated a man was passed out in the driver's seat and there were no other occupants of the vehicle. Smith woke the driver and then he (the driver) immediately fled the scene heading west on N. 105th Street. Smith told the officers multiple times words to the effect: "He [the driver] can't go far because he's hurt." In response to the officers' questions, Smith described the driver as a young black male, short (5' 6"), skinny (120 pounds), with "dreads" and a clean-shaven face. He further stated the driver was wearing a T-shirt, jeans, and brand-new, white Nike shoes.

At the time of their interaction with Smith, the officers were unaware that there was a firearm in the crashed Yukon. The officers did not ask Smith any investigatory questions regarding the circumstances of the accident itself, such as how fast the Yukon was moving prior to the crash, whether it was being driven erratically, or whether the driver appeared to have been intoxicated.

After speaking with Smith, Officers Walters and Cannon got into their patrol car and drove west on N. 105th Street. At the intersection of N. 105th Street and Phinney Avenue – less than one-half mile from the accident scene – officers saw a black male riding a scooter travelling west on N. 105th Street. The male was short and skinny and was wearing jeans and a dark jacket with the hood up. As the scooter drove into a gas

---

[2] It is unclear whether Smith was declining to provide a phone number or if he did not have a phone number to provide.

Response to Motion to Exclude Hearsay Evidence  
*United States v. Rezene*, CR16-185 JLR  
Page - 3

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

station parking lot, Officer Walters observed dreadlocks swing out from under the driver's hood.

Officers continued to follow the scooter north on Greenwood Avenue. The driver turned right on N. 107th Street and then right on Phinney Avenue. The driver accelerated the scooter and began to evasively double-back into the neighborhood. As officers turned south onto Phinney Avenue, they saw the scooter abandoned in the roadway. Officer Walters then saw the driver of the scooter attempting to jump a fence into a nearby residential yard. Officer Walters identified himself as "police" and commanded the suspect to stop. Instead, the suspect looked directly at Officer Walters and ran into another yard. Officer Walters gave chase and ultimately the suspect dropped to the ground and surrendered.

The officers handcuffed and detained the suspect, who identified himself as Samuel Rezene. Rezene was wearing brand-new black and white Nike sneakers, had his hair in dreadlocks, and was wearing a dark T-shirt, light colored jeans, and a dark hoodie sweatshirt. Rezene was bleeding from his right hand and there was blood on the right handlebar of the abandoned scooter, consistent with him suffering an injury prior to abandoning the scooter.

In the moments after his detention, Rezene told the officers that he fled from them on the scooter because he thought they were someone looking to attack him. He also claimed that his hand was bleeding because he cut it on the fence as he was trying to climb over it. The officers pointed out that this claim was inconsistent with the fact that blood was found on the scooter handlebar, which Rezene had been driving prior to his attempt to jump the fence.

Officer Cannon then read Rezene his *Miranda* rights and asked Rezene a series of questions. Rezene told the officers: he was riding the scooter coming from his girlfriend Helen's house; he was on his way to the liquor store; he fled from the police car because

Response to Motion to Exclude Hearsay Evidence  
*United States v. Rezene*, CR16-185 JLR  
Page - 4

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

he had been attacked and shot in the past, and thought it was someone out to get him; he had not been driving any vehicle that night; he didn't even have a driver's license; the only thing he had been driving that night was the scooter; he could not provide the address of his girlfriend's apartment, could not name the building, and claimed she did not have a phone number. A few minutes later, Rezene repeated this same story to Officer Walters.[3]

Officer Walters used his police radio to request that officers at the accident scene attempt to locate Marvin Smith to conduct a show-up identification of Rezene. However, the officers were unable to find Smith – he was no longer at the bus stop and various database checks yielded no leads.

In the meantime, officers at the accident scene determined that the registered owner of the Yukon was Rezene's mother. The officers also observed a Glock pistol in plain view on the driver's floorboard of the crashed Yukon. They ultimately obtained a search warrant and seized the firearm.

Rezene was placed under arrest for Unlawful Possession of a Firearm and Hit and Run and was booked into the King County Jail.

When he returned to the SPD North Precinct, Officer Walters called the phone number Rezene had provided upon his arrest and spoke to Rezene's mother, Alganesh Tesfaselasie, and his father, Neguse Naizghi. Initially, Officer Walters had a short conversation with only Ms. Tesfaselasie, during which she told him Rezene had left the

---

[3] Notably, the already non-credible story Rezene told upon arrest is flatly inconsistent with the version of events he is preparing to present at the upcoming evidentiary hearing. In support of his recent request to continue the hearing, defense counsel informed the Court via email that Rezene intends to call two witnesses – Helen Rezene and Tajona McNair – who allegedly are prepared to testify that they were with Rezene in the Yukon moments before the car crash. According to defense counsel: "Both Ms. Rezene and Ms. McNair will testify that the vehicle at issue in this case was taken in a carjacking shortly before the crash and that Mr. Rezene left the scene of the carjacking on a scooter to try to find the vehicle." Of course, no one reported this alleged "carjacking" to the police and Rezene never told the arresting officers that he had just been the victim of a carjacking. Moreover, the email from defense counsel is the first the government has heard of this "carjacking" story and comes after Rezene has served nearly four months in jail, a suspicious delay in presenting this sort of an alibi.

Response to Motion to Exclude Hearsay Evidence
*United States v. Rezene*, CR16-185 JLR
Page - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

house at around midnight with the Yukon.[4] Officer Walters called back a few minutes later and had a more detailed conversation with both parents. The entire conversation was recorded. Ms. Tesfaselasie confirmed that Rezene had been driving the Yukon that night. Mr. Naizghi then joined the conversation. He reiterated that Rezene left the house with the Yukon between 11:30 p.m. and midnight (about an hour prior to the accident) and that he was alone when he left. Ms. Tesfaselasie added that Rezene had been home all day playing video games and watching a movie, and then said, "I'm going out, I'll be back." Both parents told Officer Walters that Rezene had the only key to the Yukon with him that night. They also confirmed that the firearm found in the Yukon did not belong to them and claimed to have no information about it.

## ARGUMENT

**A.    Legal Standards Governing the Admission of Hearsay Statements in the Context of Supervised Release Proceedings.**

Neither the hearsay rules of the Federal Rules of Evidence nor the Sixth Amendment Confrontation Clause apply at a supervised release proceeding. However, a defendant does have a limited Due Process right to confront and cross-examine adverse witnesses in this context. *United States v. Walker*, 117 F.3d 417 (9th Cir. 1997).

To determine whether the admission of hearsay evidence violates a defendant's right to confrontation in a particular case, the court uses a balancing test, weighing the defendant's interest in his right to confrontation against the government's good cause for not presenting a witness. *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999). The weight to be given to the defendant's confrontation rights depends on two primary factors: (1) the importance of the hearsay evidence to the court's ultimate finding, and (2) the nature of the facts to be proven by the hearsay evidence. *Id.* at 1171. *See United States v. Martin*, 984 F.2d 308 (9th Cir. 1993).

---

[4] Officer Walters' recording device only captured the final few seconds of this conversation, and only his side of it.

Response to Motion to Exclude Hearsay Evidence
*United States v. Rezene*, CR16-185 JLR
Page - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Evidence that would be admissible at a trial under the Federal Rules of Evidence and the more stringent Confrontation Clause requirements would also satisfy the limited Due Process concerns in the supervised release context. *United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005) ("Although the Federal Rules of Evidence do not strictly apply to revocation hearings, long-standing exceptions to the hearsay rule that meet the more demanding requirements for criminal prosecutions should satisfy the lesser standard of due process accorded the respondent in a revocation proceeding.").

As is relevant here, the Confrontation Clause applies only to "testimonial" out-of-court statements. *Davis v. Washington*, 547 U.S. 813, 822-26 (2006). The fact that a statement is made to a law enforcement officer does not, in and of itself, make the statement testimonial. For example, statements taken by police officers during an interrogation are "nontestimonial," and not subject to the Confrontation Clause, when they are made under circumstances objectively indicating that the "primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547, U.S. at 822. As the Supreme Court later explained:

> The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation.

*Michigan v. Bryant*, 562 U.S. 344, 370 (2011). "The circumstances in which an encounter occurs - *e.g.*, at or near the scene of the crime versus at a police station, during an ongoing emergency or afterwards - are clearly matters of objective fact." *Id.* at 360.

In *Bryant*, the Supreme Court held that a shooting victim's statements to law enforcement officers 25 minutes after he was shot were not testimonial because the purpose of the questioning was for the police to learn what happened, who had shot the victim, and where the shooting occurred. *Id.* at 371. The ongoing emergency included the

Response to Motion to Exclude Hearsay Evidence
*United States v. Rezene*, CR16-185 JLR
Page - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  victim's medical condition and the potential continuing threat that the shooter posed to
2  police and the public. *Id.* Similarly, 911 calls are routinely held to be non-testimonial
3  under this analysis. *Davis*, 547 U.S. at 826 ("A 911 call … is ordinarily not designed
4  primarily to establish or prove some past fact, but to describe current circumstances
5  requiring police assistance.").

### B. Officer Walters' Recorded Conversation with Rezene's Parents.

Rezene objects to the admission of the recording of Officer Walters' conversation with his parents[5] without them testifying at the hearing.

The government's intention was not to call either of Rezene's parents as a witness. We were taking this approach for two reasons: (a) to avoid forcing Rezene's parents to publicly testify adversely to the interests of their own son, out of respect for the difficult familial dynamic this would create; and (b) to present their information more efficiently to preserve judicial resources.

By objecting to the admission of the hearsay evidence, Rezene's motion compels the government to create the very intra-familial dynamic we were seeking to avoid. As such, and to avoid an unnecessary evidentiary issue, the government will subpoena both parents to the hearing. We plan to call Mr. Naizghi to testify at the hearing.[6] Regarding Ms. Tesfaselasie, the government will either call her as a witness or, if we elect not to do so, make her available for Rezene to call if he so chooses.[7]

---

[5] Rezene's motion only objects to the admission of the mother's statements without mention of the father. The government assumes that Rezene intends to object to the admission of both parents' statements.

[6] Mr. Naizghi testified before the grand jury and confirmed the accuracy of the statements that both he and Ms. Tesfaselasie made to Officer Walters.

[7] During her grand jury testimony, Ms. Tesfaselasie claimed – rather unconvincingly – that she could not recall anything about the night in question and did not recall or understand the conversation she had with Officer Walters because she had been sleeping and was on various medications, including "pain medications, allergy medication, and sleeping medication." Perhaps not unrelatedly, during several recorded jail conversations immediately following his arrest, Rezene repeatedly told his mother to stop talking to the police and that she should claim not to know anything. For example, during one call, Rezene stated words to the effect: "I wasn't there, you wasn't there. We don't know what happened. That's all."

### C. Marvin Smith's Recorded Statements to the Police Officers.

Rezene objects to the admission of Marvin Smith's statements to police officers, explaining how he assisted the driver of the Yukon and describing what he looked like. The Court should deny the motion because Smith's statements are admissible at the hearing for three reasons.

#### 1. The Admission of Smith's Statements does not Violate Due Process.

The admission of Smith's statements would not violate the limited Due Process protections that apply in the supervised release context. Smith's information is far from the sort of singularly incriminating hearsay evidence that courts have found inadmissible at supervised release hearings. Unlike the situation in *Comito* – a one-victim case where the victim did not testify about the only incriminating evidence – here, Smith's description of the driver of the Yukon is one of several pieces of evidence establishing that Rezene was driving the Yukon at the time of the crash, including: Rezene was arrested several blocks away and a few minutes after the crash; the crashed car was registered to his mother; he had no plausible explanation for why he was driving a scooter at that time and location with a bloody hand; and both of his parents told the police that he had left the house with the Yukon less than an hour before the accident with the only key to the vehicle.

Because Smith's statements are one of several pieces of incriminating evidence, they are not so critical to the court's ultimate finding that they should be excluded for Due Process concerns under the caselaw cited above. This is especially the case because – at least to date – the government's good-faith efforts to locate Smith have been unavailing. Smith identified himself to officers only by name and date of birth; he did not provide a phone number or an address. After Rezene was detained, the officers attempted to locate Smith at the bus stop where they spoke with him, but he had already departed the area. Database inquiries did not provide any leads. Similarly, federal investigators'

Response to Motion to Exclude Hearsay Evidence  
*United States v. Rezene*, CR16-185 JLR  
Page - 9

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

subsequent efforts to locate Smith have not been successful, given the limited information with which to work.[8]

Moreover, the circumstances of Smith's interaction with the police should give the Court no reason to question the reliability of his statements. Smith was simply a bystander who witnessed an accident and went to assist the driver of the crash. He appears to have had no ulterior motive in providing information to the police. And the fact that Smith's statements were recorded in full further supports their admission because the Court is able to review the video and make its own assessment as to the reliability and significance of Smith's statements.

### 2. The Admission of Smith's Statements would not Violate the Confrontation Clause because they were Non-Testimonial.

Smith's statements are also admissible at the hearing because they were non-testimonial in nature and therefore would not violate the Confrontation Clause even in the context of a jury trial. Here, the police officers were responding to an emergency situation involving a totaled vehicle and unknown, missing occupant(s) who may have been in need of immediate medical care. The officers' first responsibility was to identify who had been in the car, locate them, and determine if they needed medical assistance. The primary purpose of their questions to Smith was to accomplish this community safety function. Indeed, Smith repeatedly told the officers words to the effect: "He [the driver] can't go far because he's hurt."

At the time of their interaction with Smith, the police were unaware that there was a firearm in the Yukon. Although there was the potential crime of Hit and Run for them to investigate, the officers' questions to Smith were not designed to generate evidence of that offense. Importantly, the officers did not ask Smith any questions designed to establish the circumstances of the accident, such as how fast the Yukon was moving prior

---

[8] These efforts are ongoing. If the government can find Smith, we intend to subpoena him to testify at the hearing.

Response to Motion to Exclude Hearsay Evidence  
*United States v. Rezene*, CR16-185 JLR  
Page - 10

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

to the crash, whether it was being driven erratically, or whether the driver appeared to have been intoxicated. Instead, their questions were limited to figuring out who had been in the vehicle and how the officers could locate them.

The officers' questions in this case were on par with those approved by the Supreme Court in *Bryant* and *Davis*, because their primary purpose was to identify and locate accident victims and not to investigate a crime. *See United States v. Latu*, 46 F.4th 1175, 1180-81 (9th Cir. 2022) ("Statements aimed at meeting an ongoing emergency are generally not testimonial."). As a result, Smith's statements are non-testimonial and their admission would not violate the Confrontation Clause even at a jury trial, much less in the context of a supervised release evidentiary hearing.

### 3. Alternatively, Smith's Statements are Admissible to Explain the Officers' Subsequent Actions.

In the alternative, Smith's statements would be admissible at a trial – and at the supervised release hearing – for the more limited purpose of explaining the officers' subsequent actions in searching for and detaining Rezene. Because the statements in this context would not be offered for the truth of the matters asserted, they would not constitute hearsay as defined by FRE 801(c). *United States v. Mitchell*, 502 F.3d 931, 969 (9th Cir. 2007) (no error in allowing investigator to testify about out-of-court statements from informant that caused him to go to certain location); *United States v. Munoz*, 233 F.3d 1117, 1134 (9th Cir. 2000) (no error in allowing attorney to testify about out-of-court conversations with investigators that caused him to send letter requesting that investment company sales personnel suspend investment sales); *United States v. Brown*, 923 F.2d 109, 111 (8th Cir. 1991) (out-of-court statement is not hearsay if offered for limited purpose of explaining why police investigation was undertaken).

//

//

Response to Motion to Exclude Hearsay Evidence
*United States v. Rezene*, CR16-185 JLR
Page - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CONCLUSION

For the foregoing reasons, the Court should deny as moot the defense motion to exclude the out-of-court statements made by Ms. Tesfaselasie. The Court should further deny on the merits the motion to exclude the statements of Marvin Smith.

DATED this 28th day of February, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*s/ Todd Greenberg*
TODD GREENBERG
STEPHEN HOBBS
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone: (206) 553-2636
E-mail: Todd.Greenberg4@usdoj.gov

Response to Motion to Exclude Hearsay Evidence
*United States v. Rezene*, CR16-185 JLR
Page - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970