UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR16-185 JLR |
| Plaintiff, | UNITED STATES' DISPOSITION MEMORANDUM |
| v. | |
| SAMUEL REZENE, | |
| Defendant. | |

### A. Introduction.

Samuel Rezene has lived much of his adult life as a gang member and leader who abided by the "street code" of arming himself with firearms, recklessly engaging in drug dealing and violent crimes, and pursuing vigilante justice and retribution. Rezene lived by this code, and nearly died by it, when, on May 15, 2014, he was shot multiple times at a Shell gas station in Renton. The shooting was part of a back-and-forth gun battle Rezene was engaged in with rival drug dealers and gang members. After being shot, Rezene made his way back to his BMW, retrieved his Glock pistol with an extended magazine, and returned fire in the direction of his assailants. Responding police officers found him bleeding on the ground and took him to a hospital, where he stayed for several weeks.

After a stipulated facts bench trial, this Court convicted Rezene of Unlawful Possession of a Firearm for his possession of the Glock pistol at the Shell station. The Court then sentenced him to a term of 92 months of imprisonment and three years of supervised release.

Rezene served his sentence and began the term of supervised release on August 9, 2023. ***Only 83 days later***, on October 31, 2023, at approximately 12:45 a.m., Rezene totalled his parents' GMC Yukon in a single car, high-speed crash on Aurora Avenue North. He fled the scene, leaving behind his firearm in the vehicle. After an evidentiary hearing on March 26, 2024, the Court found that Rezene committed two violations stemming from this incident – Unlawful Possession of a Firearm and Hit and Run.

Rezene's actions speak loudly. He has not changed his ways. He has not been deterred. He will not comply with this Court's orders. He continues to be a danger to the community. The Court should revoke the term of supervise release, impose the maximum term of imprisonment for 24 months, and reimpose the maximum remaining term of supervised release for one year.

**B. Rezene's Dangerous Lifestyle Leading to the Shell Station Shooting.**

This Court presided over a full-day evidentiary hearing on March 28, 2017, during which the government presented extensive evidence of Rezene's criminal activities that led to his shooting.[1] Rezene eventually admitted much of this to Seattle Police Department detectives during a recorded post-arrest interview, which the Court viewed as an exhibit at the hearing. The Court also heard the testimony of SPD Detective Rob Thomas, the lead investigator on the matter.

Detective Thomas testified that Rezene was known to law enforcement to be a member of the Holly Park gang and was, at the time of the offense conduct in 2014, believed to be the leader of this gang. *See also* PSR ¶ 34 (noting that in 2014 an arresting

---

[1] The facts in Sections B and C of this memorandum are taken from the in-court testimony of witnesses and exhibits that were admitted at the evidentiary hearing.

police officer "knew [Rezene] to be a member of the Holly Park Crips criminal street gang"). Rezene essentially acknowledged as much in the recorded interview, although he described it as a "group" instead of a "gang." Semantics aside, Rezene was the leader of this group of individuals who engaged in concerted criminal activities over a long period of time.

Although his criminal activities started even earlier, the events most relevant to the instant case started in late 2011. As the testimony at the evidentiary hearing established, Rezene admitted to Tukwila Police Department detectives that in late 2011, he and an associate named "Ish" robbed another drug dealer of five ounces of crack cocaine and $1,400 cash. Rezene described how his associate called to "set up" the victim drug dealer and identified the man they robbed as "TNE." When asked why he committed the robbery, Rezene responded, "Ish and me just did it."

In retaliation for this robbery, on February 2, 2012, Rezene was shot at in Tukwila while driving his Escalade and his girlfriend (a passenger in the car) was killed. Immediately after the shooting, Rezene admitted to investigators that, "I am sure those bullets were meant for me," but did not provide any information about potential suspects or their motives for wanting to shoot at Rezene. However, Rezene later acknowledged that this shooting was in retaliation for his robbery of TNE.

Rezene portrayed himself as suffering great sorrow over this incident. *See* PSR ¶ 48 ("According to Mr. Rezene, he has been experiencing nightmares ever since that incident."). But the reality is, the shooting in Tukwila and the death of his girlfriend had no effect on Rezene's reckless and violent behavior. If anything, he became more emboldened thereafter.

As Rezene later admitted to Detective Thomas, following the 2012 incident in Tukwila, he continued to engage in drug trafficking and ultimately committed another drug-related robbery in September 2013. This time, he ripped-off $1,500 drug proceeds from an associate of the Tuk Town Kings gang. This set off a feud between Holly Park

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and the Tuk Town Kings that lasted for years and resulted in many acts of violence including homicides.

Not surprisingly, after Rezene stole the $1,500, he started to receive threats; shots were fired at him outside of his parents' house (September 17, 2013); his family's Mercedes was burned in an arson (March 6, 2014); and shots were fired at him as he drove his BMW with his new girlfriend in the passenger seat (May 3, 2014).

Rezene's response to the retaliatory attacks against him was to arm himself with a powerful .40 caliber Glock semi-automatic pistol with an extended capacity magazine and a large pistol grip (the gun he possessed at the Shell station). He also made inflammatory postings on social media, such as:

> Fucc a opp I'll let the 30 pop watch the body drop.
>
> I can never forgive a snitch.
>
> I'm a gansta I'm on one with one in the chamber you don't know pussy nigga I'll stank ya n u can put that on me a Hundred mo geez ima gansta nigga that's fasho-Johnny Cash

This same Facebook page displayed photos of Rezene holding large sums of cash, his BMW sports car, and him flashing gang signs.

**C. Rezene's Reaction to his Shooting: More Violence and Vigilantism.**

Rezene's rivals finally caught up to him on May 15, 2014, at the Renton Shell station. After he was released from the hospital, Rezene spoke on a few occasions with a detective who was investigating the Shell station incident. Rezene refused to identify who he knew to be the assailants, claiming it would make him a "snitch." He told the detective that if he received any additional threats he would "take care of it" and "didn't care about getting a life sentence." He also said that if he found out who shot him, he would kill that person and did not care if he went to prison for it.

Not long afterwards, Rezene made good on his promises to seek revenge for his shooting. As the testimony established at the evidentiary hearing, Rezene was arrested on October 3, 2014, for a drive-by shooting offense. *See also* PSR ¶ 10-11, 35. Police

officers observed Rezene driving his BMW and firing a shot at an individual standing outside of the Yup Yup Collective marijuana dispensary in Seattle. The Yup Yup Collective is known to have been operated by Tuk-Town Kings members/associates. Rezene ultimately was convicted of Unlawful Possession of a Firearm First Degree for this incident and was sentenced to 31 months of imprisonment.  PSR ¶ 12, 35.

It was after his arrest on the drive-by shooting case that Rezene finally admitted to SPD detectives his involvement in – and instigation of – the feud between Holly Park and the Tuk-Town Kings. But even during this post-arrest interview, Rezene continued to condone violence and vigilantism. For example, Rezene was asked about a drive-by shooting at the Treehouse Collective marijuana dispensary on the night of May 15, 2014, approximately 18 hours after Rezene had been shot at the Renton Shell station.  The Treehouse Collective was also known to be operated by associates of the Tuk-Town Kings, and investigators believe this drive-by shooting was committed by Holly Park members in retaliation for Rezene's shooting. During the interview with Rezene, the following exchange took place:

> DET WATERS:   Do you know how many rounds were fired in the case I'm investigating [Treehouse Collective]?
>
> REZENE:   Um-um.
>
> DET WATERS:   Take a guess.
>
> REZENE:   Which time?
>
> DET WATERS:   (Unintelligible) *The night you were shot and-and your guys came back at uh*…
>
> REZENE:   *Can you blame them?*
>
> DET WATERS:   No, no, I'm not sayin', I'm just sayin'-I'm just sayin', you know how many rounds were shot though?
>
> REZENE:   Um-um.  How many?

| | | |
|---|---|---|
| DET WATERS: | Fifty-three. | |
| REZENE: | *That's it?* | |
| DET WATERS: | Damn. Really? That's it? So… | |
| REZENE: | *If that happened to my brother, I woulda slaughtered the whole – everything inside that dispensary*, I swear to God. Like… | |

### D. The Recent Supervised Release Violations.

Just as being shot at the Shell station was not enough to take Rezene off the path of firearm possession and retaliatory violence, this Court's 92-month sentence similarly did not change Rezene's behavior. He wasted little time – less than three months – before arming himself with another firearm and recklessly crashing his parents' car. Rezene's response after the accident is also telling about his current mindset.

First, when he was arrested in the vicinity of the crash, he told the police a preposterous story: he was riding the scooter coming from his girlfriend Helen's house; he was on his way to the liquor store; he fled from the police car because he had been attacked and shot in the past, and thought it was someone out to get him; he had not been driving any vehicle that night; he didn't even have a driver's license; the only thing he had been driving that night was the scooter; he could not provide the address of his girlfriend's apartment, could not name the building, and claimed she did not have a phone number.

Next, Rezene seemingly attempted to orchestrate another story to get himself off the hook. In the lead-up to the evidentiary hearing on the supervised release violations, Rezene's defense counsel informed the Court via email that the defense would present two witnesses – Helen Rezene and Tajona McNair – who were prepared to testify that they were with Rezene in his vehicle moments before the car crash. According to defense counsel: "Both Ms. Rezene and Ms. McNair will testify that the vehicle at issue in this case was taken in a carjacking shortly before the crash and that Mr. Rezene left the scene

of the carjacking on a scooter to try to find the vehicle." For many reasons, this "carjacking" story was not credible. In the end, neither witness provided this testimony, presumably because it would have been perjurious.

Lastly, Rezene exerted pressure on his mother not to provide truthful, incriminating information to police officers. As this Court heard, an hour after the car crash, Rezene's mother told a police officer over the phone that Rezene had recently left the house alone with the vehicle. During subsequently recorded jail calls, Rezene repeatedly told his mother to stop talking to the police and that she should claim not to know anything. For example, during one call, Rezene stated words to the effect: "I wasn't there, you wasn't there. We don't know what happened. That's all." Rezene's mother heeded his instructions, later claiming – rather unconvincingly – that she could not recall anything about the night in question and did not recall or understand the conversation she had with the police officer because she had been sleeping and was on various medications, including "pain medications, allergy medication, and sleeping medication."

### E. Information About the Gun Rezene Possessed in the Yukon.

The firearm that Rezene left behind in the Yukon was fully loaded with a round in the chamber and had a partially obliterated serial number.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The firearm was test-fired, and the results were submitted for analysis in the NIBIN database. The firearm is a presumptive match (pending more formal ballistics comparisons) for shell casings recovered from four shots-fired crime scenes and one homicide.

The shots-fired incidents involved:

- Drive-By shooting in South Seattle on February 2, 2023
- Drive-By shooting in South Seattle on April 12, 2023
- Shots-fired in King County on April 30, 2023
- Shots-fired in South Seattle on May 28, 2023

During the time of the above incidents, Rezene was still in the custody of the Bureau of Prisons, serving the end of his sentence. He was released from custody and began the term of supervised release on August 9, 2023.

A few weeks later, on September 3, 2023, a homicide took place in the Holly Park neighborhood of Seattle. The firearm seized from Rezene's Yukon is also a presumptive match for the shell casings left behind by the murder weapon.

At this time, the government is not putting forth evidence directly connecting Rezene to this homicide. But even giving Rezene the benefit of the doubt that he may not have been involved, common sense tells us he likely got the gun from someone who was. So, at a minimum, Rezene's possession of a firearm used in several recent violent crimes confirms the Probation Office's assessment that: "Mr. Rezene's extremely poor choices by committing new crimes strongly suggests he is associating with individuals who are also engaging in antisocial behavior." Probation Office Sentencing Recommendation at 3.

**F. The Government's Disposition Recommendation.**

Considering Rezene's recidivist criminal history, his nearly immediate violation of the terms of supervision through the commission of two serious criminal offenses, and the need to protect the public from Rezene's future crimes, the government recommends that the Court revoke the term of supervise release, impose the maximum term of

imprisonment for 24 months, and reimpose the maximum remaining term of supervised release for one year. A custodial term of 24 months is within the advisory Guidelines range. *See* Probation Office Sentencing Recommendation at 2 (calculating the advisory range at 21-27 months or 18-24 months if the Court reduces Rezene's criminal history category in light of a *Blake* issue).

Rezene's criminal history began in 2006 when he was 16 years old, and has continued unabated except for the periods of time during which he was incarcerated. Prior to his federal firearms conviction, Rezene had been convicted of the following serious and dangerous crimes:

- Delivery of Cocaine (involving crack cocaine).  PSR ¶ 28.

- Promoting Prostitution and Unlawful Possession of Firearm (a 14-year-old girl was forced into prostitution by Rezene's associate with Rezene's assistance and while Rezene was in possession of a firearm).  PSR ¶ 30.

- Tampering with a Witness (Rezene was charged with various felony offenses and thereafter attempted to induce a witness not to testify if called by the State).  PSR ¶ 33.

- Attempting to Elude Police Vehicle (Rezene drove 70 miles per hour through residential streets to evade police).  PSR ¶ 34.

- Unlawful Possession of a Firearm (related to the drive-by shooting of the Yup Yup Collective).  PSR ¶ 35.

The federal firearms statutes exist for the purpose of keeping firearms out of the hands of people like Samuel Rezene. Rezene has lived a reckless and dangerous lifestyle as a gang member and drug dealer. His commission of two drug robberies set off a violent chain of events that ultimately led to him being shot at the Shell station in 2014. Rezene returned fire with his own weapon and, after his recovery, once again acquired a firearm and continued to perpetuate the cycle of violence by shooting-up a marijuana dispensary operated by a rival gang. Now, after serving a 92-month sentence, he failed to

make it even three months before possessing a firearm and engaging in other dangerous and reckless conduct.

A 24-month term of imprisonment is warranted in this case.

DATED this 8th day of May, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*/s Todd Greenberg*
TODD GREENBERG
STEPHEN HOBBS
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-3903
Facsimile: 206-553-4440
Phone: 206-553-2636
E-mail: Todd.Greenberg4@usdoj.gov